# IN THE COURT OF APPEALS OF IOWA

No. 16-0964
Filed December 6, 2017

**STATE OF IOWA,**
         Plaintiff-Appellee,

**vs.**

**ALEXANDER MATTHEW KOZAK,**
         Defendant-Appellant.
_____


         Appeal from the Iowa District Court for Johnson County, Christopher L.

Bruns, Judge.


         Alexander Matthew Kozak appeals his conviction for first-degree murder

following a jury trial.  **AFFIRMED.**


         Alfredo G. Parrish of Parrish Kruidenier Dunn Boles Gribble Gentry Brown

& Bergmann L.L.P., Des Moines, for appellant.

         Thomas J. Miller, Attorney General, and Genevieve Reinkoester, Assistant

Attorney General, for appellee.


         Heard by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

Alexander Matthew Kozak worked at the Coral Ridge Mall in Coralville, Iowa.  He engaged in a verbal and electronic, semi-romantic relationship with a woman who worked at the mall, Andrea Farrington.  When Farrington broke off the relationship, Kozak retrieved his gun, went to the mall, and shot her.  Farrington died despite the heroic resuscitation efforts of a former combat medic, two nurses, and a landscaper, among others.

The State charged Kozak with first-degree murder.  A jury found him guilty as charged.

On appeal, Kozak contends: (1) the State engaged in prosecutorial misconduct in cross-examining his expert about Kozak's mental state; (2) the district court abused its discretion in allowing evidence of certain admissions he made to law enforcement officers; (3) the State improperly referenced his decision not to testify; and (4) the trial was infected with cumulative error.

## I.     *Prosecutorial Misconduct in Questioning of Expert*

Kozak frames the first issue as follows: "The State denied [him] due process when, in violation of a sustained motion in limine, it invaded the jury's province and questioned a witness regarding [his] ability to plan, deliberate, and premeditate." The procedural history informing this issue is as follows.

Before trial, Kozak notified the court of his intent to rely on a diminished responsibility defense.  At the same time, he identified Dr. Andrew C. High as an expert witness.  The State filed a motion in limine, seeking to preclude Dr. High from testifying to Kozak's "mental status or condition," on the ground that he was unqualified to do so.  The State explained Dr. High was "a Communication Studies

professor" and "[a]ny testimony from him would be irrelevant." The State followed up with a second motion in limine, reiterating the irrelevance of Dr. High's testimony. The defense responded with its own motion seeking "to prohibit" the testimony of the State's experts "regarding . . . Kozak's mental state and whether he was capable of forming the requisite specific intent to commit the charged offense."

At a hearing on the motions, the district court addressed the question "whether experts should be permitted to state an opinion . . . on the ultimate legal standards in the case," which was "whether Mr. Kozak did or did not form specific intent." The court disallowed testimony on the legal standard, as follows:

> As a general rule, experts are not allowed to render the opinion to the legal standard. Rather, they can talk about the factual predicate to the legal standard or the factual basis.
> And I would expect that *all the experts in this case*, to the extent they are testifying, *will limit themselves to testimony as to the factual predicate and not stray beyond that. And I would apply that to both sides of the case.* We shouldn't hear Mr. Kozak did or didn't have specific intent, because that's really not a proper question. . . . [T]hat would be my ruling there.

(Emphasis added.) The court reserved ruling on the State's motion to preclude Dr. High's testimony as irrelevant pending an offer of proof on the nature of his opinions. Following the offer of proof, the court denied the State's motion, reasoning, "The standard for relevance in Iowa is exceptionally broad," and Dr. High's proposed testimony goes "to the issue of whether [Kozak] may have 'Antisocial Personality Disorder.'"

At trial, Dr. High testified to "whether or not certain people communicate easier electronically as opposed to in person." He opined, "[T]he Internet is an attractive channel of communication. It's easier to present or express yourself

online than it is face-to-face.  We talk a lot about face threat in communication.  It can be less face threatening to present yourself online."  He further opined that online communication "can" create some ambiguity because many "nonverbal cues" are lost.  Finally, he stated certain text messages between Kozak and Farrington evinced "a relationship with some commitment, some intimacy," which he characterized as an "off and on sort of relationship."  In his view, "[P]eople who communicate primarily on line can certainly experience as intimate and committed a relationship as they can face-to-face," but it was "hard to say about this relationship in particular."

On cross-examination, the prosecutor asked Dr. High the following questions:

> Q. Just to clear up for the jury—you're not a psychologist, right?  A. I am not.
> Q. And you're not a psychiatrist?  A. I am not.
> Q. So you don't have any information to share with [the jury] on [Kozak's] mental state, correct?  A. I do not.
> Q. And you cannot speak to his ability to plan, correct?  A. I cannot.
> Q. Or his ability to deliberate?  A. No.
> Q. Or premeditate?  A. No.

At this juncture, Kozak's attorney asked to approach the bench.  Following a short unreported conference, the court gave the jury the following cautionary instruction:

> Ladies and gentleman, you just heard a series of questions from . . . State's counsel of this witness that encompass certain terms.  I am going to strike those questions and answers.  I'm going to admonish you to not consider those questions and answers when you do your deliberations in this case.
> I've previously given you a cautionary instruction on the terms such as deliberation, premeditation and intent.  Those are legal terms that will be defined for you in the jury instructions and it is the Court's role to define those terms and your role to assess the evidence in determining whether those elements have been established.

Kozak moved for a mistrial. The district court denied the motion, reasoning as follows:

> [M]y ruling on the motion in limine was that no expert would be allowed to render any opinion using the legal standards set by the Court. I think that the motion in limine was violated here, although I think it's a very technical violation. I'm unable to find that was intentional.
>
> I think [defense counsel] has raised an additional wrinkle here that was not addressed when we discussed the motion in limine. And that is that not only should the experts not be allowed to render opinions on the ultimate issues, but neither party should be pointing out the fact that I prohibited the experts from rendering opinions on the ultimate issues.
>
> I think the violation is a technical one and I do not think it is one that has tainted the trial in any way that would require a mistrial. I would caution counsel, I don't want to hear those ultimate terms of art asked in any questions. Your experts need to be prepared to testify without using any of those ultimate terms of art.

After the jury found Kozak guilty, the defense moved for a new trial, asserting, "Prosecutorial misconduct occurred when the State intentionally asked [Dr. High] about whether he had an opinion as to Kozak's actions being deliberate, intentional, or premeditated." The district court reconsidered its earlier finding of a "technical violation," stating categorically that the ruling "did not prohibit [the prosecutor's] questions." In the alternative, the court found the questions and answers "harmless." The court denied the new trial motion.

With this procedural background in mind, we turn to the standard for review of new trial and mistrial motions premised on prosecutorial misconduct. Kozak contends his prosecutorial misconduct claim is grounded in the constitution's requirement of a fair trial, triggering a de novo standard of review. However, the Iowa Supreme Court recently reaffirmed that rulings on claims of prosecutorial misconduct are reviewed for an abuse of discretion. *See State v. Plain*, 898

N.W.2d 801, 810-11 (Iowa 2017) (citing *State v. Jacobs*, 607 N.W.2d 679, 689 (Iowa 2000)).  This standard applies even where the claim is "that the defendant was deprived of a fair trial under our doctrines of prosecutorial error and prosecutorial misconduct."  *Id.* at 818.  In light of *Plain*, we review the district court's denial of Kozak's new trial motion as to Dr. High for an abuse of discretion.  *See id.* at 810-11.  We review the court's denial of Kozak's mistrial motion under the same standard.  *See id.*

The law governing "challenges based on prosecutorial behavior" is as follows:

> [W]e first determine whether the prosecutor violated a duty to the defendant.  If so, we consider whether that violation was intentional or reckless.  An intentional or reckless violation amounts to prosecutorial misconduct while an unintentional violation amounts only to prosecutorial error.  We then determine whether the error caused prejudice.

*Id.* at 818-19 (citations omitted).

We begin with the duty prong.  Under Iowa Rule of Evidence 5.704, "An opinion is not objectionable just because it embraces an ultimate issue."  But "[a] witness cannot opine on a legal conclusion or whether the facts of the case meet a given legal standard."  *In re Palmer*, 691 N.W.2d 413, 419 (Iowa 2005), *overruled on other grounds by Alcala v. Marriott Int'l, Inc.*, 880 N.W.2d 699, 708 n.3 (Iowa 2016).  "Such an opinion would be of no value to the jury."  *Id.*; *see* Iowa R. Evid. 5.702 (mandating expert testimony "help the trier of fact to understand the evidence or to determine a fact in issue").

The prosecutor's first two questions seeking confirmation that Dr. High was neither a psychiatrist nor a psychologist were appropriate because defense

counsel represented Dr. High's testimony would lay a foundation for later testimony on Kozak's mental health diagnosis. Those questions simply pointed out Dr. High's lack of qualification to address the diagnosis. The questions limited the scope of his testimony and did not raise a legal standard.

The prosecutor's fourth question concerning Kozak's ability to plan also did not invoke a legal standard. As the district court stated, "Planning I'm a little less caught up in because that is a very common term in the English language."

The prosecutor's final two questions—seeking to confirm Dr. High had no information on Kozak's ability to deliberate or premeditate—were the problematic questions. Although they did not seek an opinion on a legal conclusion or whether the facts of the case met a legal standard, the questions implied those legal propositions were established. More significantly, they violated the express language of the district court's original ruling on the defense motion in limine, which required "all the experts" to "limit themselves to testimony as to the factual predicate."

That said, the defense had notice from the offer of proof that the prosecutor would likely tread this ground, yet did not raise an objection when the prosecutor asked Dr. High during the offer of proof whether he could "say anything" about "diminished responsibility" and whether Kozak had "a mental defect that would prevent him from forming premeditation, deliberation or specific intent." Notably, the court had earlier instructed the attorneys to "work with [their] experts and come up with properly formulated questions so [opinions on legal conclusions were] not an issue," and the prosecutor had expressed a willingness to do so. Because the defense did not raise a concern about the prosecutor's questions during the offer

of proof, the prosecutor may have believed her subsequent trial questions about deliberation and premeditation did not offend the court's limine ruling. In this context, we conclude the prosecutor's questions about deliberation and premeditation were not intentional or reckless, and the questions amounted to prosecutorial error rather than prosecutorial misconduct.

We turn to the prejudice prong, which has been applied to prosecutorial error as well as prosecutorial misconduct. *See Plain*, 898 N.W.2d at 820. In determining prejudice, we consider

> (1) the severity and pervasiveness of the [error]; (2) the significance of the [error] to the central issues in the case; (3) the strength of the State's evidence; (4) the use of cautionary instructions or other curative measures; and (5) the extent to which the defense invited the [error].

*Id.* Although the error went to the central issue in the case—Kozak's mental state—the evidence was not pervasive. *See State v. Escobedo*, 573 N.W.2d 271, 277 (Iowa Ct. App. 1997) ("Prejudice ordinarily results from persistent efforts to inject prejudicial matter before the jury."). Kozak's attorney conceded as much in the district court, noting the trial generally had been "free of errors" and was one of the "cleaner record[s]" he had seen over the years. We concur in this assessment. The attorneys questioned forty-three witnesses over two weeks and their conduct as a whole was zealous but professional.

Significantly, the error in the prosecutor's cross-examination of Dr. High was immediately cured; the court struck the exchange and gave a cautionary instruction. *See Plain*, 898 N.W.2d at 815 ("Generally, a district court's decision not to grant a mistrial but to offer a cautionary instruction instead is entitled to broad deference," and "[c]autionary instructions are sufficient to mitigate the prejudicial

impact of inadmissible evidence 'in all but the most extreme cases.'" (citations omitted)). And, while we are not convinced defense counsel invited the error, the prosecutor may have perceived the error as invited.

Finally, the evidence of guilt was strong. After being apprehended, Kozak agreed to a recorded interview with law enforcement officers. He matter-of-factly described his relationship with Farrington as limited to verbal interactions at work and text messaging, but he suggested the relationship was more than platonic. In his words, "[W]e were something; a sick and twisted something." The night before the shooting, he said he received a text from Farrington calling off their relationship. The following day, Farrington sent another text confirming the end of their relationship. After receiving this message, Kozak left work before the end of his shift, went directly home to get his gun, returned to the mall, parked in a handicapped spot so it would be easy to get in and out, walked to Farrington's work area, pulled the gun out of his pocket, and shot Farrington three times in her back. He said he was only planning to shoot her once but "squeezed off three instead." He admitted he gave "serious thought" to the shooting and "was fully aware the whole time." In his words, "I thought of it and I carried it out."

Multiple witnesses corroborated the shooting. A teenager at the mall with her sister saw Kozak just before the shooting and described him as "focused" and "on a mission" and his demeanor as "very suspicious." An off-duty law enforcement officer who saw Kozak just after the shooting testified there "was an eerie calmness about him as he walked."

The gun used in the shooting was recovered from a compactor outside one of the mall service doors. The gun matched the description provided by Kozak.

Kozak's medical expert conceded Kozak "absolutely" was able to plan and carry out actions that he wanted to do on the day of the shooting and was able to show "planned, purposeful behavior" before, during, and after the shooting. The expert made this concession after diagnosing Kozak with intermittent explosive disorder and underlying borderline personality disorder.

In sum, Kozak suffered no prejudice by virtue of the prosecutor's error in questioning Dr. High about deliberation and premeditation. We conclude the district court did not abuse its discretion in denying Kozak's mistrial motion and motion for new trial on this ground.

## II. Kozak's Admissions

During the recorded law enforcement interview discussed above, Kozak used legal terms in characterizing his actions. He said he committed "premeditative murder," stated the term meant "there was some serious thought to it and it was deliberate," and agreed he shot Farrington with the intent to kill her.

Kozak's motion in limine sought to preclude the introduction of his "prior statements which encompass the legal conclusion of specific intent," including "statements . . . that the shooting was done 'deliberately, 'intentionally', or 'with premeditation.'" At the pretrial hearing on the motion, the district court found the statements were "not couched so clearly in legal terms that they would be inadmissible." The court stated it was inclined to allow the evidence, subject to a limiting instruction.

At trial, Kozak's attorney objected to the admission of the statements. Citing rule 5.704, he argued, "No witness under Iowa law, including the Defendant, can offer any evidence that goes to the ultimate issue." The prosecutor responded,

"It's probably the best evidence to let the Defendant explain what he was thinking and what he was intending."

The district court overruled the defense objection, reasoning rule 5.704 was "not a basis to exclude the evidence" because this was "an admission or alleged admission by [Kozak]." The court balanced the probative value of the evidence against its prejudicial effect and concluded "the potential of misleading or confusing the jury would have to be extremely high to . . . substantially outweigh the probative value" and "giving a cautionary instruction [would] reduce the potential of misleading or confusing the jury." But, even in the absence of an instruction, the court concluded the probative value was "very high." The court reaffirmed its pretrial ruling.

The audio recording of the interview was admitted as a trial exhibit and was played for the jury in open court. A transcript of the recording was admitted as a court exhibit but was not sent back with the jury during deliberations. After the playback, the court gave the jury the following cautionary instruction:

> Members of the Jury, you've just heard a recorded conversation between [Kozak], Special Agent Rahn, and Officer Engstler. During the conversation, the terms premeditation, deliberation, and intent or variations of those terms may have been used.
> Those terms have precise legal definitions which may not have been understood by the persons taking part in the conversation. Those terms are legal standards to be used by you when reaching your verdict and will be defined for you by the Court in the final jury instructions.
> The use of those terms in the conversation does not necessarily mean that [Kozak] acted with premeditation, deliberation, or intent, as those terms are defined by the law.
> In deciding this case, you are to rely on the definitions of premeditation, deliberation, and intent that will be provided to you in the final jury instructions and you must evaluate the evidence in this case using the definitions in the final jury instructions.

Further you are to consider all the evidence in this case in deciding whether [Kozak] acted with premeditation, deliberation, and/or intent.

Following trial, Kozak moved for a new trial based on the district court's failure to exclude the statements incorporating legal "terms of art." The district court denied the motion.

On appeal, Kozak contends "It was unfairly prejudicial to introduce [his] use of legal terms of art to describe his intent and actions." He argues his statements run afoul of the rule that "a witness cannot opine on a legal conclusion or whether the facts of the case meet a given legal standard." Our review of this issue is for an abuse of discretion. *State v. Rodriguez*, 636 N.W.2d 234, 239 (Iowa 2001). We discern no abuse.

Kozak's reference to the "premeditative" nature of his crime was neither prompted nor coerced but came in response to the agent's open-ended question, "What crime have you committed?" The agent followed-up by asking what premeditation meant to Kozak. He responded, "It means . . . there was some serious thought to it and it was deliberate." After this response, the agent asked, "[A]nd when you said it was deliberate, meaning shooting [Farrington]?" Kozak responded, "Yes, sir." The agent then asked, "Okay. With the intent to kill her?" Kozak responded, "Yes." While this final answer was prompted by the agent's question, the question flowed directly from Kozak's definition of premeditation.

There could not have been more probative evidence of Kozak's state of mind than his own characterization of what he was thinking at the time of the shooting. As the district court determined, Kozak's statements amounted to direct admissions of his state of mind. *See* Iowa R. Evid. 5.801(d)(2); *compare Direct*

*Evidence*, Black's Law Dictionary (10th ed. 2014) ("evidence that is based on personal knowledge or observation and that, if true, proves a fact without inference or presumption") *with Opinion Testimony*, Black's Law Dictionary ("[t]estimony based on one's belief or idea rather than on direct knowledge of the facts at issue"). The statements were not opinion testimony subject to rule 5.704. *See* Iowa R. Evid. 5.704 ("An opinion is not objectionable just because it embraces an ultimate issue.").

We recognize a defendant's use of legal terminology could prove confusing. The district court's cautionary instruction mitigated this concern.

We conclude the district court reasonably weighed the probative value of the evidence against its prejudicial effect and reasonably concluded the exchange containing legal terminology was admissible. *See* Iowa R. Evid. 5.403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). The court did not abuse its discretion in denying Kozak's new trial motion on this ground.

## III. *Reference to Decision not to Testify*

During closing argument, the prosecutor made the following comments:

> In jury selection I asked you, how many of you, when you hear that somebody shot another person, say he must have been crazy or she must have been crazy? There is that part of it, that we want to have that natural doubt. *We don't want to believe that somebody sitting here is responsible for doing this.* We don't want to believe that somebody who's walked among us, who was a security guard, who

> was married, who had friends, who had a mother and sister, could do this to another person.

(Emphasis added.) Kozak moved for a mistrial. He argued the reference to "someone sitting here" was "a comment on [Kozak] not testifying during the course of the trial." The district court denied the motion. Kozak moved for a new trial on the same ground. The court again denied the motion. The court reasoned, "[N]othing that was said or done suggested anything in regard to whether Mr. Kozak had testified or not. Nothing counsel said suggested that the jury should draw any inference from Mr. Kozak's failure to testify."

On appeal, Kozak again argues the prosecutor improperly commented on his decision not to testify. *See State v. Bishop*, 387 N.W.2d 554, 562 (Iowa 1986) ("The federal constitution prohibits a prosecutor from commenting on a defendant's failure to testify in his or her own behalf."). A prosecutor's arguments focusing on lack of evidence or failure to produce witnesses raise concerns because the law "places the burden to produce evidence on the State, not the defendant." *Id.* at 563; *see also State v. Hanes*, 790 N.W.2d 545, 556 (Iowa 2010) ("It is improper for the State to shift the burden to the defense by suggesting the defense could have called additional witnesses."). The prosecutor's comment did not implicate this concern. Even a generous reading of the "sitting" comment cannot lead to a conclusion that the prosecutor was "requesting [Kozak] to provide an answer to the jury for his conduct," as he contends. We conclude the district court did not abuse its discretion in denying the mistrial and new trial motions on this ground.

## IV.    *Cumulative Effect*

Kozak argues "the cumulative effect of the constitutional and evidentiary errors violated [his] right to a fair trial and due process." Having found no individual errors, we conclude there was no cumulative error.

We affirm Kozak's judgment and sentence for first-degree murder.

**AFFIRMED.**