**IN THE COURT OF APPEALS OF IOWA**

No. 22-1414
September 27, 2023


**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**TAYVON LYNN DAVIS,**
    Defendant-Appellant.
_____

    Appeal from the Iowa District Court for Woodbury County, Tod Deck, Judge.


    Tayvon Davis challenges the sufficiency of the evidence supporting his convictions. **AFFIRMED.**


    Priscilla E. Forsyth, Sioux City, for appellant.

    Brenna Bird, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.


    Heard by Bower, C.J., and Ahlers and Chicchelly, JJ.

**AHLERS, Judge.**

Tayvon Davis lived with his girlfriend and her nineteen-month-old daughter. Over the course of the first few weeks after Davis took on more childcare responsibilities, the child began experiencing a series of seemingly unexplained health problems including arm pain, lack of energy, listlessness, vomiting, and difficulty walking. The downward spiral in the child's health ended tragically when, while in Davis's sole care, the child stopped breathing and became unresponsive. Although Davis took the child to her maternal grandmother's nearby residence and the two rushed her to the hospital, efforts to resuscitate the child were unsuccessful, and the child died. An autopsy revealed numerous broken bones in her arm, legs, ribs, and back. Some of the fractures were old enough to show signs of healing, but others were new. The medical examiner classified the manner of death as homicide and the cause of death to be complications of multiple blunt-force injuries.

The State charged Davis for the death of the child. Following a trial, the jury found Davis guilty of the three charges against him—murder in the first degree, pursuant to Iowa Code sections 707.1 and 707.2(1)(e) (2018), a class "A" felony; child endangerment resulting in death, pursuant to sections 726.6(1)(a) and 726.6(4), a special class "B" felony with a fifty-year term of incarceration; and multiple acts of child endangerment, pursuant to section 726.6A, a class "B" felony.

Davis appeals. He challenges the sufficiency of the evidence supporting all three convictions. Sufficiency-of-evidence challenges are reviewed for correction of errors at law. *State v. Crawford*, 972 N.W.2d 189, 202 (Iowa 2022). Jury verdicts bind us if they are supported by substantial evidence. *Id.* Evidence is

substantial if it is sufficient to convince a rational factfinder that the defendant is guilty beyond a reasonable doubt. *Id.* In assessing whether evidence is substantial, "we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (quoting *State v. Tipton*, 897 N.W.2d 653, 692 (Iowa 2017)). As Davis challenges the sufficiency of the evidence supporting all three convictions, we will address each conviction separately.

## I.      Murder in the First Degree

The court gave the following marshaling instruction on the murder-in-the-first-degree charge:

> 1.      On or about August 22, 2018, the defendant caused blunt force injuries to [the child].
> 2.      [The child] was under the age of 14 years.
> 3.      [The child] died as a result of blunt force injuries.
> 4.      The defendant acted with malice aforethought.
> 5.      The defendant was committing the offense of:
>         a.      Child Endangerment. A person who is the parent, guardian, or person having custody or control over a child or a minor under the age of eighteen with a mental or physical disability, or a person who is a member of the household in which a child or such a minor resides, commits child endangerment when the person by an intentional act or series of intentional acts, uses unreasonable force, torture[,] or cruelty that results in bodily injury, or with the specific intent to cause serious injury.
>                 <u>or</u>
>         b.      Assault. An Assault is committed when a person does an act with the specific intent to cause pain or injury, result in physical contact which will be insulting or offensive, or place another person in fear of immediate physical contact which will be painful, injurious, insulting[,] or offensive to another person, when coupled with apparent ability to do the act.
> 6.      [The child's] death occurred under circumstances showing an extreme indifference to human life.

As Davis raised no objection to this marshaling instruction, it became the law of the case for purposes of assessing his sufficiency-of-the-evidence challenge. *See State v. Schiebout*, 944 N.W.2d 666, 671 (Iowa 2020) ("Jury instructions, when not objected to, become the law of the case for purposes of appellate review for sufficiency-of-evidence claims.").

Davis challenges the evidence supporting most of the elements, asserting the State presented insufficient evidence that (1) he caused blunt-force injuries to the child; (2) the child died from blunt-force injuries; (3) he acted with malice aforethought; (4) he committed the offense of child endangerment or assault; and (5) the child's death occurred under circumstances showing an extreme indifference to human life. We address each assertion in turn.

### A.    Causing Blunt-Force Injuries

Davis contends no one saw or heard him mistreat the child generally, let alone on the date the child became unresponsive and later died. He points to the lack of external injuries as support for his claim that the State failed to prove he was responsible for inflicting blunt-force injuries to the child.

The lack of direct evidence noted by Davis does not persuade us there is insufficient evidence supporting the finding that he caused the child's blunt-force injuries. Direct evidence is not required because we treat direct and circumstantial evidence as being equally probative. *State v. Ernst*, 954 N.W.2d 50, 57 (Iowa 2021). There is abundant circumstantial evidence here. There is no dispute that Davis was alone with the child when she stopped breathing. Medical experts testified that the child's fatal injury resulted from a violent force applied to the brain inside the skull, such as from violent acceleration/deceleration of the head by

shaking, and the catastrophic effects of the brain injury would be nearly immediate and obvious. As Davis was the only one with the child when the injuries were inflicted, a reasonable juror could conclude that Davis was responsible for inflicting the injuries.

### B. Blunt-Force Injuries Causing Death

Davis argues that the State's evidence was also insufficient to establish that the child died from blunt-force injuries. He again highlights the lack of external bruising and also points out that the child's skull was not fractured. He also contends the child had a variety of other medical issues that could have caused her to stop breathing and ultimately led to her death. Likewise, he points to his efforts in trying to resuscitate the child in the car on the way to the hospital as the possible cause of injuries that resulted in lack of oxygen to the child's brain and ultimately to the child's death. He points to his expert's testimony that children sometimes just stop breathing to support his contention that there is insufficient proof blunt-force injury caused the child's death.

Davis's argument overlooks the evidence presented by the State that the brain injury and the retinal bleeding the child suffered were caused by very fast alternating movement, such as by shaking the child back and forth, and that such motion resulted in the injuries causing the child's death. The State also presented evidence rejecting the notion that the child's medical conditions or efforts to resuscitate the child could have caused her fatal injuries. A reasonable juror could have concluded that the child died from being shaken with extreme force rather than for some other reason.

### C.     Malice Aforethought

A person has malice aforethought when the person acts with "a fixed purpose or design to do physical harm to another that exists before the act is committed." *State v. Tyler*, 873 N.W.2d 741, 751 (Iowa 2016) (citation omitted). Davis contends there was no evidence that he acted with malice aforethought. He points to the evidence that he had a caring relationship with the child and the lack of evidence of malice or bad feelings toward the child.

Davis's argument ignores various pieces of evidence that support a finding of malice aforethought. The State introduced medical evidence that the child's brain and retinal injuries could only be caused by the type of motion produced by a motor-vehicle collision or violent or abusive head trauma. A reasonable juror could conclude that, with the severity of force needed to inflict the child's injuries, Davis acted with the purpose or design to do severe physical harm to the child. As will be discussed in more detail later in this opinion, a reasonable juror also could have concluded that Davis inflicted the numerous other injuries discovered at the child's autopsy. Such a juror could then conclude that Davis acted with malice aforethought when he inflicted the fatal injuries to the child a few days later. *See State v. Henderson*, No. 20-0608, 2021 WL 1400085, at *3–4 (Iowa Ct. App. Apr. 14, 2021) (finding sufficient evidence of malice aforethought when the child had multiple injuries of varying ages before receiving trauma to the head that resulted in the child's death).

### D.     Committing Child Endangerment or Assault

For his challenge to the element that required the State prove Davis committed the offense of child endangerment or assault when the fatal injuries

were inflicted, Davis reprises many of his previous arguments claiming the child did not suffer blunt-force injuries or die because of them. For the same reasons we rejected those arguments in relation to the other elements, we reject them in relation to this one.

Davis also claims the child's injuries could have just as easily been caused by an accident like dropping her after giving her a bath rather than from intentional acts by him. But the evidence does not support this claim. First, Davis's claim that he dropped the child did not surface until much after the investigation into the child's death began. Davis told one of the early treating physicians that he was with the child and started to give her a bath and the child later became less and less responsive. Davis mentioned nothing about dropping her. In a later conversation with a nurse, Davis again described giving the child a bath to try to calm her fussiness and stated the child just went limp. Again, he made no mention of dropping the child and gave no other explanation for why the child stopped breathing. It was only after Davis became aware that doctors had found suspicious injuries that implicated the child's caregiver that Davis began asserting that he dropped the child. A reasonable juror could conclude that, if Davis had dropped the child and the child became unresponsive after the fall, Davis would have mentioned it right away. The fact that he didn't would justify a reasonable juror concluding that Davis was lying about dropping the child and he concocted the lie because he had intentionally inflicted the injuries. *See State v. Hettinger*, No. 21-0548, 2022 WL 1486187, at *4 (Iowa Ct. App. May 11, 2022) (noting the incriminating nature of the defendant's changing story about how the child suffered fatal injuries). Second, the State presented evidence that a reasonable juror could

have accepted to reach the conclusion that a fall, such as dropping the child while removing her from her bath, would not have caused the injuries this child suffered. So, even if a reasonable juror accepted Davis's claim that he dropped the child, the juror could still reasonably conclude that the drop did not cause the fatal injuries and the fatal injuries were caused by Davis's other, intentional acts.

Based on the medical and other testimony, a reasonable juror could conclude that Davis committed the offense of both child endangerment and assault when the fatal injuries were inflicted. The evidence reasonably supports a conclusion that Davis was a member of the household in which the child resided and Davis intentionally used unreasonable force that resulted in bodily injury to the child. Likewise, a reasonable juror could conclude Davis did an act with the specific intent to cause pain or injury or result in physical contact that would be insulting or offensive when he inflicted the injuries that resulted in the child's death.

## E.     Circumstances Showing Extreme Indifference to Human Life

To contest the finding that the child's death occurred under circumstances showing an extreme indifference to human life, Davis points to the child's medical history, his quick efforts to seek help when the child became unresponsive, and his efforts to resuscitate the child on the way to the hospital. But Davis's argument fails to counter the evidence that the child's medical history could not have caused the conditions that led to her death. Nor does his argument counter the evidence that the child's fatal injuries were caused by severe acceleration/deceleration injuries consistent with violent shaking at a time when he was the only one present who could have inflicted the injuries. A reasonable juror could conclude that Davis violently shook or otherwise mistreated the child to the point that fatal injuries were

inflicted and that the circumstances showed Davis's extreme indifference to the child's life, regardless of what actions he took to try to save the child's life after inflicting the fatal injuries.

## II.    Child Endangerment Resulting in Death

The court gave the following marshaling instruction on the child-endangerment-resulting-in-death charge:

> 1.    On or about August 22, 2018, the defendant was the person having custody or control of [the child] or was a member of the household in which [the child] resided.
> 2.    [The child] was under the age of 14 years.
> 3.    a. The defendant acted with the knowledge that he was creating a substantial risk to [the child's] physical, mental, or emotional health or safety
>                    or
> b. The defendant intentionally committed an act or series of acts which used unreasonable force, torture, or cruelty that resulted in bodily injury to [the child] or that was intended to cause serious injury to [the child].
> 4.    The defendant's acts resulted in the death of [the child].

As with the murder charge, Davis did not challenge the instruction, so it becomes the law of the case in relation to his sufficiency-of-the-evidence challenge. *See Shiebout*, 944 N.W.2d at 671.

Davis challenges only the third element. His challenge consists largely of repeating the arguments he made with respect to the murder charge, this time highlighting the fact that there were competing experts as to what caused the child's injuries. For the same reasons we rejected Davis's arguments with respect to the murder charge, we reject them with respect to this charge. The fact that Davis presented expert testimony that conflicted with the testimony of the State's experts does not negate the sufficiency of the State's evidence, as the jury is entitled to resolve the conflict between the experts and could do so in the State's

favor. *See State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000) ("When a case evolves into a battle of experts, we, as the reviewing court, readily defer to the [fact finder's] judgment as it is in a better position to weigh the credibility of the witnesses.").

A reasonable juror could conclude that the child's death was the result of non-accidental traumatic injury that involved shaking or other force violent enough to cause injury to the brain that resulted in the child's death. Such a juror could also conclude Davis was the only person with the child at the time the injury was inflicted. As a result, that juror could reasonably conclude that Davis acted with knowledge that he was creating a substantial risk to the child's physical health or safety, or that he intentionally committed an act or series of acts which used unreasonable force that resulted in bodily injury to the child, and the child's death was caused as a result. Accordingly, Davis's challenge to the sufficiency of the evidence of his child-endangerment-resulting-in-death charge fails.

## III.    Multiple Acts of Child Endangerment

The court gave the following marshaling instruction on the multiple-acts-of-child-endangerment charge:

> 1.    On or about July 1, 2018 through August 22, 2018, the defendant was the person having custody or control of [the child] or a member of the same household.
> 2.    [The child] was under the age of 14 years.
> 3.    The defendant engaged in a course of conduct which included three or more separate and distinct acts within a [twelve-]month period where:
>     a. The defendant knowingly acted in a manner which created a substantial risk to [the child's] physical, mental, or emotional health or safety
>
>              or
>
>     b. The defendant intentionally committed an act or series of acts or used unreasonable force, torture, or cruelty resulting

in bodily injury to [the child] or that was intended to cause serious injury to [the child].

With no objection to this instruction, it becomes the law of the case in relation to Davis's sufficiency-of-the-evidence challenge. *See Shiebout*, 944 N.W.2d at 671.

Davis contends there is insufficient evidence of three separate and distinct acts of Davis injuring the child. He cites *State v. Niederbach* in support of his contention that the evidence is insufficient to support his conviction on this charge because a number of people had been alone with the child during the time the various injuries were caused. 837 N.W.2d 180 (Iowa 2013). But, as the State correctly notes, *Niederbach* does not mandate the direct evidence Davis seems to suggest is required—the case simply requires enough evidence to enable a reasonable fact-finder to conclude beyond a reasonable doubt that Davis inflicted a particular injury. *See id.* at 218–19. We are persuaded that a reasonable fact-finder could determine that Davis intentionally used unreasonable force resulting in bodily injury to the child on at least three occasions.

We start with the number of injuries. While the medical experts generally agreed that placing a date on an injury after the fact is difficult, there was sufficient evidence to allow a reasonable juror to conclude that the child suffered at least three separate and distinct injuries. Without listing all the injuries the child suffered, we point out that the State presented evidence that there were at least two events leading to the child's ribs being broken, as the autopsy revealed both healing fractures and new fractures to multiple ribs. The same is true with regard to broken legs, as the autopsy revealed both healing and new fractures of both legs. The child's broken vertebra being in a state of healing indicated that it had been broken

prior to the event leading to the child's death. There was also a healing fracture of the arm. Finally, of course, there are the injuries that resulted in the child's death.

Even if we assume that the new fractures found during the autopsy were inflicted at the same time that the fatal injuries were inflicted, there are healing fractures supporting a finding that they were inflicted before the fatal injuries. Even though determining the date of the prior injuries could not be accomplished solely with medical testimony, there is other evidence that supports a conclusion that at least some of the prior injuries happened at two different times. Three weeks before the fatal injuries were inflicted, the child was discovered to have an injured arm immediately after being in Davis's sole care. Davis said nothing about the arm injury when he dropped the child off with her maternal grandmother later that day. The grandmother immediately noticed the injury and sought medical treatment. Only after the child's mother told Davis about the child being taken to the doctor did Davis mention the child's arm problem, and then he blamed the daycare even though the child seemed to be fine after returning from daycare the night before Davis watched the child. A reasonable juror could conclude that Davis's failure to report the injury to the child's arm until someone else discovered it coupled with his attempt to deflect blame on the child's daycare (blame that was rebutted by the fact that the child was observed to be fine between her return from daycare through the time that the child ended up in Davis's sole care) established that Davis intentionally used unreasonable force that injured the child. A reasonable juror could conclude that, if Davis had unintentionally injured the child, he would have notified the grandmother or at least not tried to deflect blame for the injury. The

arm injury, occurring three weeks prior to the fatal injuries, is the first event of child endangerment that the jury could have found established.

Thirteen days after the arm incident, and eight days before the fatal injuries occurred, the child's mother noticed that the child was having difficulty holding up her head and holding the mother's phone. This came after four consecutive days during which the child was alone with Davis for at least part of each day. Three days after that, during which time the child was again in Davis's sole care for at least part of each day, the child began having difficulty walking. A reasonable juror could conclude that the child's vertebra, ribs, or leg fractures occurred during this period of time. Again, despite Davis having the child in his sole care at times during most days in this period, he reported no injuries or accidents, which a reasonable juror could conclude established that Davis was not reporting the injuries because he inflicted them. The child's difficulty holding up her head and walking five to eight days before the fatal injuries is a second event of child endangerment that the jury could have found established. Of course, the third event would be the event during which the fatal injuries were inflicted.

Having determined that a reasonable juror could conclude that the child suffered three separate and distinct acts of intentional and unreasonable force resulting in injury, we address the evidence that Davis inflicted the injuries. As noted previously, the child began experiencing mysterious ailments that interfered with her ability to use her arm, hold up her head, and walk in a three-week period leading up to her death. Despite repeated trips to the doctor during that period, none of the medical professionals diagnosed the fractures revealed at the autopsy. That three-week period coincided with Davis taking on an increasing amount of the

child's care responsibilities. Each time the child displayed signs of injury, it immediately followed a period during which Davis was her sole care provider. Couple that with the fact that Davis never once reported any of the problems that others immediately noticed after the child left Davis's care, and a jury could reasonably conclude Davis was the cause. To be sure, the jury was not obligated to find three events of abuse or that Davis caused the injuries during those events, but a reasonable jury could have and did here. Therefore, we reject Davis's challenge to the sufficiency of the evidence supporting his conviction for multiple acts of child endangerment.

## IV.    Weight of the Evidence

Throughout Davis's brief challenging the sufficiency of the evidence, Davis also refers to the evidence being against the weight of the evidence. He also references raising the issue of the verdict being against the weight of the evidence in his new-trial motion and cites the correct standard of review (i.e., abuse of discretion). *See State v. Stendrup*, 983 N.W.2d 231, 246 (Iowa 2022) (noting that review of rulings on new-trial motions based on the claim that the verdict is contrary to the weight of the evidence is for abuse of discretion). However, Davis does not develop any argument explaining how the district court abused its discretion in denying his motion for new trial. As a result, we find the issue waived. *See State v. Tyler*, 867 N.W.2d 136, 166 n.14 (Iowa 2015) (noting that a "passing reference" to an issue in a brief is insufficient to avoid waiver of the issue). Moreover, we agree with the State that, just like the supreme court found in *Ernst*, Davis "repackaged his sufficiency-of-the-evidence challenge into a weight-of-the-evidence challenge" and he has "fail[ed] to identify any specific evidence that

preponderates so heavily in favor of acquittal that we can say the district court abused its discretion in denying his motion for a new trial." 954 N.W.2d at 60. As a result, to the extent Davis challenges the district court's denial of his new-trial motion based on the weight of the evidence, we reject the challenge.

V. **Conclusion**

Sufficient evidence supports all three convictions, and we reject any challenge to the district court's new-trial motion ruling based on the weight of the evidence. Therefore, we affirm.

**AFFIRMED.**