# IN THE COURT OF APPEALS OF IOWA

No. 22-0426
Filed September 27, 2023

**STATE OF IOWA,**
　　Plaintiff-Appellee,

**vs.**

**ALEJANDRO ANTONIO FLORES,**
　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Muscatine County, Tom Reidel, Judge.

Defendant appeals his conviction of one crime and the imposition of consecutive sentences on two counts of going armed with intent and two counts of willful injury causing serious injury. **AFFIRMED.**

Elizabeth Araguas of Nidey, Erdahl, Meier & Araguas, PLC, Cedar Rapids, for appellant.

Brenna Bird, Attorney General, and Israel Kodiaga, Assistant Attorney General, for appellee.

Considered by Ahlers, P.J., Badding, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2023).

**BADDING, Judge.**

A night out at a new bar almost ended with the deaths of two of its patrons after they were stabbed in the parking lot. Alejandro Flores was caught by police running from the bar with a bloody knife in his pocket. He was charged with multiple crimes for the stabbings, including two counts of attempt to commit murder.

After hearing from more than twenty witnesses and watching videos from cameras inside and outside the bar, a jury found Flores guilty of two counts of assault with intent to inflict serious injury (as lesser included offenses of the attempted-murder charges), two counts of going armed with intent, and two counts of willful injury causing serious injury. Flores appeals, raising a sufficiency-of-the-evidence challenge and a complaint about his sentences. We affirm.

## I.      Background Facts and Proceedings

On January 23, 2021, Samantha Frye and her boyfriend decided to celebrate their birthdays together with a dinner at a local restaurant. When they were done eating, they called Samantha's niece, Faith, who was out on a date herself. The couples met up at a nearby martini bar, before deciding to head to a new bar in town.

Soon after they arrived, Faith's ex-boyfriend, Dayton Elliott, walked into the bar with a group of people that included Flores. No one in Samantha's group knew Flores. But they did know Elliott because his relationship with Faith had ended badly. Faith felt threatened when Elliott walked in, as did Samantha. So they made plans to leave while trying to avoid Elliott—who was staring at them from across the bar and making hand gestures toward them.

As Samantha, Faith, and their dates tried to walk out of the bar, Elliott and Flores approached them. The video from cameras inside the bar, which does not have audio, seems to show the two groups exchanging words. An owner of the bar moved Elliott away from Samantha's group as they left the bar. Flores tried to go after them, but Ashley, one of Samantha's friends, held him back for a few seconds, ripping his sweatshirt in the process. Flores pushed her aside and quickly followed Samantha's group outside. Elliott left the bar from a different exit and went around to the parking lot.

Video from cameras outside the bar shows Samantha's group walking to her vehicle. Flores can be seen rushing out after them. Ashley was close behind, trying to separate him from the group. While she was next to Flores, Ashley testified that she heard a switchblade click open and saw the blade in his hand. She yelled out, "Knife," but no one heard her. Faith's date, however, saw the knife when he turned to look back at Flores. Ashley ran into the bar to get help, while another bystander tried to keep Flores away from Samantha's group.

Meanwhile, Samantha's group made it to her car. They all got in except for Samantha, who was standing outside the driver's side door yelling for Ashley to come with them. As she was doing so, Flores and Elliott advanced toward her vehicle. Elliott split off from Flores and went around to the front of the car while Flores approached the passenger side. The video of what happened next is dark and difficult to see. One of the bar owners, who was standing outside, testified that it looked like Flores "put his upper body into the vehicle." But Samantha's boyfriend, who was in the front passenger seat, said that Flores never came into

the vehicle. He was sure that all the windows and doors, except for Samantha's, were closed.

According to Samantha, who was still outside the vehicle, Elliott was "banging on the vehicle and shouting profanities . . . demanding that Faith talk to him." Samantha testified that she looked across the car at Elliott and heard him say, "Fucking stab her already." Samantha got into the car and told her boyfriend what Elliott had said. Once she was inside, Samantha's boyfriend saw Flores "on the front passenger side of the car in the front." Samantha then tried to back out of the parking spot. She thought that her window was down while she was doing so. As the car was backing up, some bystanders outside the bar thought it ran over Flores's leg. From her spot in the back, Faith remembers seeing Flores "getting up off the ground, propping himself up on the car."

Another camera angle outside the bar shows that as the car pulled out of the parking spot, Flores ran toward the driver's side in a crouched position. The car then speeds away. Inside the car, Samantha "felt a gush" of what she thought was warm water pouring down her back. She put her hand behind her left shoulder blade and saw it was blood. Samantha told her boyfriend that she'd been stabbed. While he put pressure on the wound, Samantha drove them straight to the hospital.

Back at the bar, Elliott and Flores walked up to a car parked near the front that belonged to Dalton Manley's fiancée. Dalton, who didn't know either Elliott or Flores, went outside to tell them that "it was not their vehicle and they should probably leave" because the police had been called. Surveillance video from the bar shows that Flores had a knife in his hand as he approached Dalton. One of the women who was with Elliott's group stepped in between them and then

punched Dalton in the face. After Dalton pushed her away, a fight broke out between him, Flores, and Elliott. Bystanders jumped in, and one pulled Dalton out of the melee. Dalton staggered toward the front door of the bar, soon realizing that he had been stabbed in the abdomen. As police cars pulled into the bar's parking lot, Flores and Elliott took off in different directions.

One of the police officers who responded to the disturbance chased after Flores, yelling at him to stop. Flores kept running into a rail yard behind the bar. The officer saw Flores try to jump over a rail car but, as he was coming down, Flores got his foot stuck in the coupling of the car. With Flores trapped, more officers caught up to him. Knowing there had been a stabbing, an officer asked Flores if he had any knives on him. Flores admitted that he had one in his front pocket. The officer removed the knife before freeing Flores's foot and placing him in handcuffs. The knife had blood on it, which subsequent testing determined was from Dalton. Elliott was later found hiding in a dumpster by the bar. Both victims survived their life-threatening injuries.

Flores and Elliott were charged in a joint trial information with the two stabbings.[1] They were tried together, and a jury found Flores guilty of two counts of assault with intent to inflict serious injury, as lesser included offenses of attempted murder; two counts of willful injury causing serious injury; and two counts of going armed with intent. At Flores's sentencing, the district court merged the two assault counts with the two willful-injury counts and imposed consecutive

---

[1] They were both charged with two counts of attempt to commit murder and two counts of willful injury causing serious injury. Flores was also charged with two counts of going armed with intent.

sentences on the remaining counts, for a total term of imprisonment not to exceed thirty years.

Flores appeals, claiming (1) the evidence was insufficient to prove that he stabbed Samantha; and (2) the district court abused its discretion by imposing consecutive sentences.

## II.     Sufficiency of the Evidence

We review challenges to the sufficiency of the evidence supporting a conviction for correction of errors at law.  *State v. Crawford*, 974 N.W.2d 510, 516 (Iowa 2022).  As our supreme court stated in *Crawford*,

> When evaluating the sufficiency of the evidence, we consider whether, taken in the light most favorable to the State, a finding of guilt is supported by substantial evidence in the record.  There is substantial evidence if the evidence would convince a rational fact finder the defendant is guilty beyond a reasonable doubt.  We draw all legitimate inferences in support of the verdict.  However, evidence which merely raises suspicion, speculation, or conjecture is insufficient.  The evidence must at least raise a fair inference of guilt as to each essential element of the crime.

*Id.* at 516–17 (cleaned up).

Flores does not identify which elements of which counts he is challenging. Instead, he asserts: "Even viewed in the light most favorable to the State, the evidence was insufficient to prove Flores stabbed [Samantha] beyond a reasonable doubt."[2]  In support of this claim, Flores contends (1) there was no video evidence showing that he stabbed Samantha; (2) Samantha "was very

---

[2] The State argues that Flores waived this claim because he did not "cit[e] to the record or develop[e] his arguments."  While Flores's claim is lacking in specificity, we find there is enough there to allow us to address the claim without becoming advocates ourselves.  *Cf. Inghram v. Dairyland Mut. Ins. Co.*, 215 N.W.2d 239, 240 (Iowa 1974).

intoxicated on the evening in question" and neither she nor anyone else saw the stabbing take place; and (3) Samantha's blood was not found on Flores's knife.[3]

True, the video does not show Samantha's stabbing, and no one saw it happen. But direct evidence of guilt is not required. That's because "circumstantial evidence is as probative as direct evidence." *State v. Brimmer*, 983 N.W.2d 247, 256 (Iowa 2022). And here, there was plenty of circumstantial evidence that could convince a rational jury that Flores stabbed Samantha. *See Crawford*, 974 N.W.2d at 516.

Flores was armed with a knife as he pursued Samantha and her group outside the bar. Just before Samantha was stabbed in her back left side, she heard Elliott tell Flores, "Fucking stab her already." *See, e.g.*, *State v. Burton*, No. 19-1754, 2021 WL 2453365, at *15 (Iowa Ct. App. June 16, 2021) (concluding the statement "bitch I'll shoot you" was substantial evidence in support of murder conviction). Flores can be seen on the videos near Samantha's car and running up to the driver's side as the car paused to shift into drive, supporting the State's theory that Flores stabbed Samantha through the open window as she drove away. After the stabbings, Flores was caught running from the police with a bloody knife in his pocket. *See State v. Marsh*, 392 N.W.2d 132, 134 (Iowa 1986) (stating evidence of flight may be introduced at trial and used by counsel in argument as evidence of consciousness of guilt). Although Samantha's blood was not found on the knife, the other victim's was. In an interview with the police after the stabbings,

---

[3] Flores also challenges law enforcement's failure to "conduct any forensic investigation on [Samantha's] vehicle, although it had blood on the interior and exterior." But he does not explain what that would have proven, since Samantha was the only one in the vehicle who was stabbed.

Flores admitted that "[h]e had possession of his knife the entire" night. He also told the officer "that he was already fucked and he'd stabbed two white bitches that he didn't even know."

There is conflicting evidence in the record, with each witness remembering the chaotic events a bit differently. But it's the jury's job, not ours, to sort out those conflicts. *See State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993) ("The jury is free to believe or disbelieve any testimony as it chooses and to give weight to the evidence as in its judgment such evidence should receive. In fact, the very function of the jury is to sort out the evidence and place credibility where it belongs." (cleaned up)). Upon viewing the evidence in the light most favorable to the jury's verdict, including reasonable inferences to be drawn from it, we conclude there was sufficient evidence that Flores stabbed Samantha. *See State v. Ernst*, 954 N.W.2d 50, 60 (Iowa 2021).

## III.    Consecutive Sentences

Flores next challenges the reasons the court provided for its decision to impose consecutive sentences. We review this claim for an abuse of discretion. *See State v. Hill*, 878 N.W.2d 269, 272 (Iowa 2016).

Iowa Rule of Criminal Procedure 2.23(3)(d) requires the court to "state on the record its reason for selecting the particular sentence." This rule "applies to the district court's decision to impose consecutive sentences." *Hill*, 878 N.W.2d at 273. "Although the reasons need not be detailed, at least a cursory explanation must be provided to allow appellate review of the trial court's discretionary action." *State v. Jacobs*, 607 N.W.2d 679, 690 (Iowa 2000).

Here, the court provided more than a cursory explanation:

Well, Mr. Flores, my duty in every case is to determine what the appropriate rehabilitative plan for you would be, and to always, first and foremost, consider that the public must be protected. In doing so, I look at the seriousness of the crime, the effect that this crime has upon members of the community, whether you have any willingness to accept change and treatment, and what's available to assist [] you [in] that process. In the entire thought process, I do start with the least restrictive alternatives before I move on to the more restrictive.

. . . .

I've been a judge for 11 years—actually 11 years today—and I have handled murder cases. I've handled many violent crimes. I don't think I've seen anybody act as callously as you did and have as little remorse for aggressive, unprovoked violence against two individuals as you have.

I think you're a danger to the community. I don't think you have any interest in changing. I think you think it's cool to be a danger to the community and that scares me.

So in order to protect the community, to maximize your chance for rehabilitation, and to deter this type of conduct in others, the Court does believe that all four charges should run consecutive to each other.

The Court also notes that despite the fact that these crimes happened at the same place and literally minutes apart, there was absolutely no connection between the [separate] crimes. They were just two separate crimes that were heinous in nature, and they were committed by a person, apparently, who is prone to violence.

There was nothing in the evidence I heard in almost three weeks of trial that indicated there was anything that Samantha [] did to provoke this. While there was a little evidence that [Dalton] did something to provoke a response, he did nothing to provoke a response that would be this disproportionate to have another human being thrust a knife into his flesh. That is just a heinous and violent act.

While Flores complains the court did not adequately consider his ability to be rehabilitated, that was one of the court's first stated considerations—whether Flores had "any willingness to accept change and treatment" and what was "available to assist [him in] that process." And although the court did not mention the mitigating circumstances that Flores highlights on appeal—like Flores's absentee father, the death of his mother a few months before the stabbings, and

his substance-abuse history—the court is not "required to specifically acknowledge each claim of mitigation urged by a defendant." *State v. Boltz*, 542 N.W.2d 9, 11 (Iowa Ct. App. 1995). Further, the "failure to acknowledge a particular sentencing circumstance does not necessarily mean it was not considered." *Id.* We find no abuse of discretion in the court's decision to impose consecutive sentences.

## IV. Conclusion

We find sufficient evidence supports Flores's convictions for stabbing Samantha and detect no abuse of discretion in the court's imposition of consecutive sentences.

**AFFIRMED.**