# IN THE COURT OF APPEALS OF IOWA

No. 24-1180
Filed January 7, 2026

**State of Iowa,**
Plaintiff–Appellee,

v.

**John Walter Spooner,**
Defendant–Appellant.

Appeal from the Iowa District Court for Black Hawk County,
The Honorable David P. Odekirk, Judge.

**AFFIRMED**

Martha J. Lucey, State Appellate Defender, and Theresa R. Wilson,
Assistant Appellate Defender, attorneys for appellant.

Brenna Bird, Attorney General, and Joshua Henry, Assistant Attorney
General, attorneys for appellee.

Considered without oral argument
by Ahlers P.J., and Chicchelly and Buller, JJ.
Opinion by Buller, J.

**BULLER, Judge.**

John Spooner appeals his conviction for involuntary manslaughter, challenging sufficiency of the evidence. This conviction was returned after another jury found him guilty on many of the same facts for arson in the first degree; we affirm that conviction today in *State v. Spooner*, No. 24-0249, 2026 WL ___ (Iowa Ct. App. Jan. 7, 2026). On review, we affirm because this case was a battle of the experts, and it is not our role to second-guess which experts the jury chose to believe.

## BACKGROUND FACTS AND PROCEEDINGS

Spooner had been staying for a few days at the home of Tony Grider, where Grider lived with a few roommates. The roommates had odd interactions with Spooner the night before the fire: Spooner asked one whether he felt "safe" in the house, and another overheard Spooner pacing and talking to himself. They thought Spooner seemed "delusional" or was "tripping," and sometimes he saw "[t]hings that aren't really there."

The morning of the fire, a neighbor encountered Spooner at a nearby church parking lot. Spooner was again acting strangely, and he was carrying a blue lighter and flicking it repeatedly. The neighbor recorded videos of Spooner in which he can be heard talking about "blow it up," "smoke," and "snakes." The neighbor saw Spooner walking toward Grider's house. And when the neighbor returned about ten minutes later, she saw "[f]lames coming out of the roof."

The roommates were awakened by a loud noise like glass breaking and quickly realized the house was on fire. Bystanders and first responders reported that the fire appeared to start or was most intense around the front

porch. By the time firefighters arrived, the front of the house—including the porch—was engulfed in flames.

One resident of the house escaped out her first-floor window, while another jumped from his second-story window to escape. Grider was still inside in his bedroom directly above the fire, but the flames were initially too hot for anyone to safely attempt a rescue. Eventually, firefighters tamed the blaze and found Grider unresponsive and "covered in soot" on his bedroom floor; he was pronounced dead at the hospital. After performing an autopsy, the medical examiner ruled the cause of death "inhalation of products of combustion and thermal injuries," both internal and external.

At the scene, witnesses and first responders spotted a gas can in the street about a house-distance away from the fire, and police seized it. One of the roommates encountered Spooner and asked him why he didn't alert her to the fire; Spooner asked her if she saw a "serpent" near the porch and told her the serpent was "coming" for her.

Police spoke to Spooner while responding to the fire, and he told them that he saw the fire, it started on the porch, he thought "Tony" (Grider) started it, he tried to put the fire out with a bucket, and he moved the gas can from the porch to the street. Spooner was, according to police, "kind of hard to understand." At one point in this conversation, Spooner said—more or less unprompted—"this is not arson." An officer found a blue lighter on Spooner's person while transporting him to the police department. And another officer observed Spooner saying "things that didn't make sense" when he was placed in a holding cell.

In its case in chief, the State presented expert testimony from a local fire investigator and the city fire marshal; a private fire consultant testified for

the State in rebuttal. These experts opined that the fire started on the porch using an ignitable fluid like gasoline, burned through the "junk on that porch," then spread into the interior of the house. And they testified that they ruled out alternative causes like electrical issues, weather, or a cigarette. Testing at the state crime lab established there was gasoline in the gas can and one of the samples recovered from the deck.

The defense experts disagreed with the State's witnesses. A defense expert focused on engineering testified that the cause of the fire was undetermined and it more likely originated in the living room. And a defense chemistry expert opined that the gasoline found in the gas can did not match the gasoline found on the porch decking. A Division of Criminal Investigation criminalist disputed whether the chemistry expert's conclusion was scientifically valid and testified that the standards for the laboratory equipment at issue specifically prohibit the kind of matching the defense expert performed.

Investigators also collected surveillance footage from the neighborhood. Video showed Spooner repeatedly walking up to the porch before the fire started. No one else walked up to the porch during that time. Video also captured the gas can rolling into the street, Spooner picking it up, and later throwing it.

At trial, Spooner told the jury that he and others smoked methamphetamine in the house the night before the fire. He said that he made the statements to the neighbor because he wanted to "say[] something crazy trying to make her leave." He said that, although he didn't start the fire (and suspected someone else did), he noticed a fire on the porch, tried to put it out, and threw a nearby gas can into the street. He explained the statement about seeing the serpent by telling the jury he got bit by a snake and now

4

"every time I get paranoid I start seeing snakes." Methamphetamine use, he said, makes him more paranoid.

The county attorney charged Spooner with murder in the first degree, but the jury found him guilty of lesser-included involuntary manslaughter, a class "D" felony in violation of Iowa Code section 707.5(1)(a) (2022). Spooner appeals, arguing there was insufficient evidence he started the fire resulting in Grider's death.

## STANDARD OF REVIEW

We review sufficiency-of-the-evidence claims for correction of errors at law. *State v. Jones*, 967 N.W.2d 336, 339 (Iowa 2021). "In determining whether the [factfinder]'s verdict is supported by substantial evidence, we view the evidence in the light most favorable to the State, including all 'legitimate inferences and presumptions that may fairly and reasonably be deduced from the record evidence.'" *Id.* (citation omitted). We do not substitute our view of the evidence for that of the factfinder. *See State v. Hernandez*, 20 N.W.3d 502, 507–08 (Iowa Ct. App. 2025) (en banc). And, "[w]hen a case evolves into a battle of experts, we, as the reviewing court, readily defer to the [factfinder]'s judgment as it is in a better position to weigh the credibility of the witnesses." *State v. Jacobs*, 607 N.W.2d 679, 685 (Iowa 2000).

## DISCUSSION

This case was a classic battle of the experts in which we owe great deference to the jury's decision on which experts to believe. *See id.* On the one hand, the State's expert testimony supported a fire started by Spooner on the porch. On the other, the defense experts pointed toward an unknown cause and different origin for the fire, which at least arguably weighed against

Spooner as the arsonist. The jury chose to believe the State's witnesses, which we observe is supported by a significant amount of circumstantial evidence—like the video footage, Spooner's admissions, and his possession of the blue lighter. Spooner has not established any valid basis on which we could substitute our view of the evidence for the jury's. *See id.*; *Hernandez*, 20 N.W.3d at 507–08.

**AFFIRMED.**